IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| JRL Energy, Inc., et al.[1] | ) Case No. 24-61173-grs |
|  | ) (Jointly Administered) |
| Debtors. | ) |

### MOTION OF ROCKWOOD CASUALTY INSURANCE COMPANY FOR ALLOWANCE AND PAYMENT OF AMOUNTS OWED UNDER INSURANCE AGREEMENT AS ADMINISTRATIVE EXPENSE

Rockwood Casualty Insurance Company ("Rockwood") files this motion for allowance and payment of postpetition past due monthly premiums and collateral payments in the total amount of $629,090.00 and future postpetition amounts due for coverage for Debtor JRL Energy, Inc., for workers' compensation insurance coverage required by state law as an administrative expense under 11 U.S.C. § 503(a), (b). As explained below, the Debtor's postpetition obligations owed to Rockwood are actual, necessary costs and expenses of preserving the Debtor's bankruptcy estate. Accordingly, Rockwood requests that this Court enter an order substantially similar to the attached proposed order, determining that premium and collateral obligations are an administrative expense and directing the Debtor to make payment in accordance with the policy terms.

The urgency of the situation increased with Debtors filing an emergency motion to sell its accounts receivable. (Docket 226.). Debtors admit they have exhausted their DIP financing and are unable to find additional financing. The budget attached to the motion shows that Debtors have no intention to paying for the cost of their insurance. Debtor denies their contractual obligations to pay premiums and reserves necessary to pay current and future claims. The budget instead

---

[1] The Debtors in these chapter 11 cases are JRL Energy, Inc, and its subsidiaries JRL Coal, Inc.; JRL Underground, Inc.; and JRL Acquisition, LLC.

contemplates of $140,000 a month, roughly 30 percent of the estimated $464,000 it owes each month. Without this order, Debtor hopes to complete a sale and avoid its liability for the insurance that it is legally required to have in order to operate.

This motion is supporting by the declaration of Ron Davidson, Rockwood's senior vice president and chief operating officer, attached as *Exhibit 1*.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over these Chapter 11 Cases under 28 U.S.C. §§ 157 and 1334. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A). Venue of this proceeding and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested in this Motion are sections 503(a) and 503(b) of the Bankruptcy Code.

3. Rockwood confirms its consent pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rule(s)") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of all parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

## BACKGROUND

4. On December 17, 2024 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, which Chapter 11 Cases are jointly administered and pending before this Court.

5. The Debtors are continuing to operate and maintain their business as debtors in possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

6.  Rockwood provides workers' compensation insurance, including federal coverage under the Black Lung Benefits Act, to Debtor JRL Energy. Rockwood began providing workers' compensation insurance for JRL Energy on an annual basis on December 17, 2019, and the policy has been renewed on an annual basis, with the latest renewal agreed to on August 8, 2024. (*See* Policy documents attached as *Exhibit 2*, collectively, the "Rockwood Policy.")[2]

7.  Under the Rockwood Policy, Debtors are obligated to make a payment each month for (1) the premium, based on a formula run in conjunction with the payroll (Bates RW2, Rockwood Policy § III.2), **and** (2) the Deductible Loss Fund ("Loss Fund"), an escrow account administered by Rockwood to reimburse it for paying Debtors' deductible on allows claims, as Rockwood must do as a matter of law. (Bates RW2, Rockwood Policy § V.2(a), as amended in 2022 to change to fixed monthly charge per year at Bates RW14-16). Ex. 1, Davidson declaration at ¶¶4-8 (discussing in more detail the Loss Fund and payment obligations on claims). The most recent monthly payment was due February 15, 2025, totaling $464,508 ($93,591 in premium and $370,917 for the Loss Fund). *Id.* at ¶10. The payments are due on the 15th of each month, with the premium payment for coverage the prior month, and the Loss Fund payment for the month of the required payment. *Id.* at ¶¶4-8.

8.  The Debtor received final authorization to use its cash collateral by Order of the Court entered on February 21, 2025 (Docket No. 212) ("Cash Collateral Order"). As stated in the Debtors' motion to approve such final use of cash collateral, the purpose of the funds was to pay "all operating expenses." (Docket No. 138.)

9.  At the hearing on the cash collateral motion, counsel for Rockwood notified the Debtors and the Court that the Debtors were not current on postpetition payments and that the

---

[2] Counsel bates stamped the insurance agreements as RW1-20 for ease of reference.

Debtors' budget did not include funds sufficient to make the required payment to Rockwood. (*See* Budget at Docket No. 138-2.) The Debtors' Budget provides for two payments of only $140,653 (not $464,508) to Rockwood on March 7, 2025 and April 4, 2025. (Docket 226, Ex. B).

10. The Debtors have made two payments to Rockwood, one in the amount of $148,631 a month after the Petition Date and the second in the amount of $111,830 following the entry of the Cash Collateral Order. Davidson declaration at ¶10. Neither payment was sufficient for the amount owed. Rockwood has applied the payments as follows. *Id.*

| Payroll Report Month | Payment Due Date | Amount of Premium Due | Amount of Loss Fund Due | Total Payment Due | Payment Received | Date Payment Received | Remaining Balance Due |
|---|---|---|---|---|---|---|---|
| 12/17-12/31* | 1/15/25 | $54,126 | $370,917 | $425,043 | $148,631 | 1/15/25 | $276,412 |
| January | 2/15/25 | $93,591 | $370,917 | $464,508 | $111,830 | 2/26/25 | $352,678 |
| | | | | | | | $629,090.00 |

*Rockwood applied this payment solely to the post-petition prorated premium amounts accrued after the December 17, 2024 Petition Date and the postpetition Loss fund payment due on January 15, 2025.

11. Thus, the Debtor is not in compliance with the payment terms of the Rockwood Policy. In addition to the current balance that in unpaid, the following amounts will be due beginning March 15, 2025. *Id.* at ¶11.

| Payroll Report Month | Payment Due Date | Amount of Premium Due* | Amount of Loss Fund Due | Total Payment Due |
|---|---|---|---|---|
| February | 3/15/25 | *$93,591* | $370,917 | $464,508 |
| March | 4/15/25 | *$93,591* | $370,917 | $464,508 |
| April | 5/15/25 | *$93,591* | $370,917 | $464,508 |

*The monthly premium is a placeholder using the premium incurred for the January 2025 payroll, due February 15, 2025. Rockwood acknowledges that as Debtors' payroll declines, the premium will decrease. The potential decrease in premium based on actual payroll, however, are not material to the total amounts due to Rockwood.

12. Without postpetition maintenance of the workers' compensation insurance provided by Rockwood, the Debtors' mines would be shut down because such coverage is required by federal law. *See, e.g.,* 30 U.S.C. § 932(b). Although the federal statute states an operator may be self-insured for black lung coverage, self insurance is not permissible under the relevant state law for workers' compensation in Kentucky. KRS 304.49-020(1)(f) ("No captive insurer that is issued an initial certificate of authority on or after July 1, 2006, shall directly provide workers' compensation insurance . . . .").

13. Debtors also have told this court that if the mines close (i.e., the estate is no longer a going concern), the estates' value will be diminished: "The DIP Facility provides the funding necessary for the Debtors to reorganize or sell substantially all of their assets as a going concern. Without the DIP Facility, Debtors run substantial risk of moving into administrative insolvency and destroying the going concern value of the Debtors' estates." (*See* Expedited & Supp. Mot. for Postpetition Financing & Use of Cash Collateral, Docket No. 138, ¶ 16.) Therefore, Rockwood's continued coverage postpetition was and remains a necessary cost to maximize the estate value.

14. Furthermore, the Court's Chapter 11 Operating Order requires that "[t]he Debtor in possession shall maintain and keep in force all insurance normally carried by the Debtor" and that the failure "to comply with any aspect of th[e] order . . . may be grounds for dismissal or conversion of the case." (Ch. 11 Operating Order, Docket No. 6, §§ VI & XIV.)

15. Rockwood issued a notice of cancellation for the failure to pay the Loss Fund payments in full for January and February. While the cancellation arises from the Debtors' failure to make required postpetition payments and a motion for relief from the automatic stay should not be necessary, Rockwood also intends to file a motion for relief out of an abundance of caution.

**RELIEF REQUESTED**

16. Rockwood seeks entry of an Order (a) allowing an administrative expense claim pursuant to 11 U.S.C. § 503(b)(1) in the amount of $629,090.00; (b) authorizing payment on such claim upon the Court's direction; and (c) allowing and authorizing payment of future amounts due and owing under the Rockwood Policy as administrative expenses pursuant to 11 U.S.C. § 503(b)(1) until termination, cancellation, or some other final disposition of the Rockwood Policy.

**GROUNDS FOR RELIEF**

17. Pursuant to section 503(a) of the Bankruptcy Code, an entity may file a request for payment of an administrative expense. Pursuant to section 503(b), the Court shall allow such administrative expenses after notice and a hearing. 11 U.S.C. § 503(b).

18. The Bankruptcy Code grants priority to administrative expenses "including . . . the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). A cost or expense qualifies as actual and necessary "if (1) it arose from a transaction with the bankruptcy estate and (2) directly and substantially benefitted the estate." *In re Sunarhauserman, Inc.*, 126. F.3d 811, 816 (6th Cir. 1997) (citations omitted). With respect to the second element, courts examine whether the expense made a "substantial contribution" to the estate – contributions that enhance the debtor's process of reorganization or provide an actual and demonstrable benefit to the debtor and its creditors. *See Pacificorp Ky. Energy Corp. v. Big Rivers Elec. Corp. (In re Big Rivers Elec. Corp.)*, 233 B.R. 739, 746 (W.D. Ky. 1998) (finding "contributions to the bankruptcy case" is generally understood to mean "foster and enhance, rather than retard or interrupt the progress of reorganization." (quoting *Hall Fin. Group v. DP Partners, Ltd. Partnership (In re DP Partnership)*, 106 F.3d 667, 672 (5th Cir.), *cert. denied* 139 L. Ed. 2d 26, 118 S. Ct. 63 (1997))); *id.* ("The test for determining if a party made a substantial contribution to the case focuses on

whether the actions and efforts of the applicant 'resulted in an actual and demonstrable benefit to the debtor's estate and the creditors (quoting *Lebron v. Mechem Fin.*, 27 F.3d 937, 944 (3d Cir. 1994))). In addition, a substantial contribution is confirmed when the expenditure is made not for the creditor's sole benefit, but instead goes beyond a creditor's self-protection. *Id*.

19. The actual, necessary costs and expenses of preserving Debtor's bankruptcy estate include Debtor's post-petition obligations to Rockwood. First, the Debtors' bankruptcy estate continued to utilize the Rockwood Policy postpetition as required to comply with federal and state law. *See In re A.H. Robins Co., Inc.*, 68 B.R. 705, 711 (Bankr. E.D. Va. 1986) (citation omitted) (holding that even "passive acceptance of benefits from a creditor during the post-petition period . . . converts that creditor's claim for post-petition services into one entitled to an administrative priority"). Rockwood's administrative claim is based on unpaid premiums and reserves for future claims due under the Rockwood Policy for services and benefits provided postpetition to and for the benefit of the bankruptcy estate.

20. Second, for the same reason, such use directly and substantially benefitted the estate by allowing the estate to comply with insurance requirements set forth by federal and Kentucky state law. The required payments are not for the Rockwood's protection, but for the protection of the entire estate and all of its creditors. The workers' compensation coverage Rockwood provides is required to be maintained by federal and state law. 11 U.S.C. § 1112(b)(4)(C) (debtor's case can can be converted for cause, including failure to maintain appropriate insurance); 30 U.S.C. § 932(b) (operator "shall" secure payment of benefits for black lung); 30 U.S.C. § 933(a) (operator of a coal mine "shall" secure benefits via self insurance (if permitted) or insurance); KRS 304.49-020(1)(f) (no captive insurer "shall" provide workers' compensation insurance). Without this

benefit from Rockwood, the Debtor would not have been able to continue operating postpetition. 30 U.S.C. § 932(b); 30 U.S.C. § 933(a).

21. The Court recognizes the need for a Debtor in possession to maintain required insurance by including the requirement in its Chapter 11 Operating Order. (Ch. 11 Operating Order, Docket No. 6, § VI.) Failure to pay the premiums to Rockwood will result the termination of the Rockwood Policy and could result in the dismissal of conversion of the Debtors' cases. (*Id.*, § XIV.) 11 U.S.C. § 1112(b)(4)(C).

22. Numerous courts have recognized the administrative expense status of amounts owed under insurance policies in substantially similar circumstances, specifically including workers' compensation insurance. *See Potter v. CNA Inc. Co. (In re MEI Diversified, Inc.)*, 106 F. 3d 829, 832 (8th Cir. 1997) (holding that "[t]here can be no doubt that continuing workers compensation insurance is essential to preserving the estate of a Chapter 11 debtor in possession" and granting administrative priority to post-petition workers' compensation insurance premiums); *In re City Roofing Co. of Muskogee, Inc.*, 208 B.R. 503, 505 (Bankr. E.D. Okla. 1997) ("Workers compensation insurance is an actual and necessary expense for the debtor."); *see also Metro. Ins. Co. v. Sharon Steel Corp. (In re Sharon Steel Corp.)*, 161 B.R. 934, 937 (Bankr. W.D. Pa. 1994) (holding that if a debtor elects to continue to receive the benefits under an insurance policy postpetition in the form of continuing coverage, the debtor and insurer have entered into a transaction under which the debtor has an obligation to pay the insurer's claims as an administrative expense); *In re Gamma Fishing Co.*, 70 B.R. 949, 953-55 (Bankr. S.D. Cal. 1987) (holding "a debtor receiving necessary benefits from a pre petition executory insurance contract must accord the non-debtor party an administrative expense priority . . . during the period in which the estate received benefits from the contract"); *In re Payless Cashways, Inc.*, 305 B.R. 303, 308

(Bankr. W.D. Mo. 2004) ("Providing insurance coverage post petition entitles the insurer to an administrative expense claim.").

23.  Moreover, bankruptcy courts have not condoned a debtor's "desire to play it both ways—to compel [insurers and collateral support providers] to continue the coverage and then refuse to pay the [outstanding obligations]." *Metro. Life*, 161 B.R. at 938 (holding that an insurer could not be denied administrative expense priority claim for unpaid obligations arising under an insurance agreement where the "Debtor not only willingly accepted the benefits of the entire Policy, but fought to retain the coverage" and then "refuse[d] to pay the [obligations]").

24.  Accordingly, the unpaid postpetition amounts due under the Rockwood Policy and any future amounts due are therefore entitled to allowance as an administrative expense under section 503(b)(1) of the Bankruptcy Code.

## RESERVATION OF RIGHTS

25.  Nothing contained in this motion for allowance of administrative expense shall constitute a waiver of: (a) the right to have final orders in non-core matters entered only after *de novo* review by a District Court Judge; (b) the right to trial by jury in any proceeding triable in this case or any case, controversy, or proceeding related to this case; (c) the right to have the District Court withdraw the reference in any matter subject to mandatory or discretionary abstention; (d) any objection to the jurisdiction or venue of this Court; (e) an election of remedy; (f) the right to amend this request for allowance of administrative expense claim; (g) the right to assert claims for attorneys' fees and costs which may accrue or have accrued; and/or (h) any other right, claim, defense, action, setoff, or recoupment, in law or in equity, under any agreement, all of which are expressly reserved.

26. Rockwood reserves the right to amend and/or supplement this motion for allowance of an administrative expense at any time and in any manner including, without limitation, as necessary or appropriate to amend, quantify or correct amounts, to provide additional detail of the claims set forth herein, and/or file additional proofs of claim and/or requests for allowance of administrative expense claims for any additional amounts owing to Rockwood. Rockwood's motion for allowance of administrative expense claims are made without prejudice to Rockwood's rights under the Bankruptcy Code, applicable non-bankruptcy law, or otherwise.

27. Rockwood reserves all of its rights, claims, defenses and/or exclusions with respect to all non-debtors and nothing herein shall be construed as a waiver of such rights, claims, defenses and/or exclusions, or as an admission against Rockwood's interests.

## CONCLUSION

WHEREFORE, for the reasons stated above, Rockwood respectfully requests that the Court enter the Proposed Order allowing and authorizing payment of the post-petition amounts owed to Rockwood under the Rockwood Policy in the amount of $629,090.00 plus payments of future postpetition amounts owed as they become due and owing and grant such other or further relief as the Court may deem just or proper.

Dated: March 14, 2025                               Respectfully submitted,

/s/Louis M. Bubala III
Louis M. Bubala III (Nev. Bar No. 8974)    Mary Elisabeth Naumann (KY Bar # 88328)
*Admitted Pro Hac Vice*                     Chacey R. Malhouitre (KY Bar # 91019)
50 W. Liberty Street, Suite 1100            JACKSON KELLY PLLC
Reno, Nevada 89501                          100 W. Main Street, Ste. 700
Telephone: (775) 852-3900                   Lexington, KY 40507
Facsimile: (775) 327-2011                   Telephone: (859) 255-9500
E-Mail: lbubala@kcnvlaw.com                 Facsimile: (859) 252-0688
                                            E-mail: mnaumann@jacksonkelly.com
*Counsel for Rockwood Casualty*             chacey.malhouitre@jacksonkelly.com
*Insurance Company*


 


## **CERTIFICATE OF SERVICE**

      I certify that March 14, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will serve notice on all parties registered to receive notice in this case.

      */s/Louis M. Bubala III*
      Louis M. Bubala III

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| JRL Energy, Inc., et al.[1] | ) Case No. 24-61173-grs |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) |

**ORDER GRANTING MOTION OF ROCKWOOD CASUALTY INSURANCE COMPANY FOR ALLOWANCE AND PAYMENT OF AMOUNTS OWED UNDER INSURANCE AGREEMENT AS ADMINISTRATIVE EXPENSE UNDER 11 U.S.C. § 503(b)**

This matter is before the *Court on the Motion of Rockwood Casualty Insurance Company for Allowance and Payment of Amounts Owed under Insurance Agreement as Administrative Expense* (the "Motion")[2] filed in the above-referenced Chapter 11 proceedings whereby Rockwood requests entry of an order allowing it an administrative expense claim under section 503(b)(1)(A) of the Bankruptcy Code. The Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and reference from the United States District Court for the Eastern District of Kentucky pursuant to 28 U.S.C. § 157; this matter being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); venue of the Chapter 11 Cases and the Motion being proper under 28 U.S.C. §§ 1408 and 1409; the Court having reviewed the Motion and determined that the relief requested in the Motion is just, reasonable and satisfies the requirements of the Bankruptcy Code; the Court having found that Rockwood is a creditor of the Debtors and that the postpetition amounts due and owing under the Rockford Policy ("Rockwood Administrative Expense Claim") were incurred by Rockwood

---

[1]  The Debtors in these chapter 11 cases are JRL Energy, Inc, and its subsidiaries JRL Coal, Inc.; JRL Underground, Inc.; and JRL Acquisition, LLC.

[2]  Capitalized terms not otherwise defined herein shall have the meanings provided in the Motion.

in providing a substantial contribution in a case under chapter 11 of the Bankruptcy Code; the Court having found that proper and adequate notice of the Motion has been given and that no other or, further notice is necessary; and upon the record herein, and after due deliberation thereon, and good and sufficient cause appearing therefore; IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

1. The Motion is hereby GRANTED.

2. The Rockwood Administrative Expense Claim is hereby ALLOWED in the amount of $629,090.00 as an administrative expense under Sections 503(b)(1)(A) of the Bankruptcy Code to be paid by the Debtor within five business days of the date of the entry of this Order.

3. Future amounts owing as part of the Rockwood Administrative Expense Claim are hereby ALLOWED as they come due and owing pursuant to the Rockwood Policy and as an administrative expense under Sections 503(b)(1)(A) of the Bankruptcy Code to be paid by the Debtor in accordance with the terms of the Rockwood Policy.

4. The Court retains jurisdiction to hear and determine all matters arising from or related to the implementation or interpretation of this Order.