IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| JRL Energy, Inc., et al.[1] | ) Case No. 24-61173-grs |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) Hearing Date: March 20, 2025 |
| | ) Hearing Time: 9:00 a.m. |

**ROCKWOOD CASUALTY INSURANCE COMPANY'S REPLY IN SUPPORT OF ITS MOTION OF FOR ALLOWANCE AND PAYMENT OF AMOUNTS OWED UNDER INSURANCE AGREEMENT AS ADMINISTRATIVE EXPENSE**

Rockwood Casualty Insurance Company ("Rockwood") moved for allowance and payment of administrative expenses of the amounts post-petition under its insurance agreement with JRL Energy, Inc. (Docket 229). Debtor opposed (Docket 248). Rockwood replies with the reply declaration of Ron Davidson, Rockwood's senior vice president and chief underwriting officer, attached as Exhibit 1.[2]

1.      Debtor's opposition is solely argument by counsel, which is not evidence to rebut the evidence presented in the motion. *E.g., Corder v. Ethicon, Inc.*, 473 F. Supp.3d 749, 767 n.20 (E.D. Ky. 2020).

**There is no realistic chance that a buyer will take JRL's policy**

**and reduce the expenses owed by JRL**

2.      Rockwood rejects debtor's argument that the amount of the administrative claims is unknowable at this time because a buyer "may want to continue to the current policy or work

---

[1] The Debtors in these chapter 11 cases are JRL Energy, Inc, and its subsidiaries JRL Coal, Inc.; JRL Underground, Inc.; and JRL Acquisition, LLC.

[2] Mr. Davidson is chief underwriting officer. The motion errantly identified him as the chief operating officer. Counsel apologizes for the error.

4907-1950-7494                                                    1

Case 24-61173-grs Doc 259 Filed 03/19/25 Entered 03/19/25 21:01:17 Desc Main
Document      Page 2 of 7

out an agreement with Rockwood." (Docket 248 at 2, ¶2). The following is supported by Mr. Davidson's reply declaration and attached exhibits.

3.	Neither debtor nor buyer can decide to continue the policy. Rockwood has the exclusive right to decide whether to transfer the policy. Reply Exhibit 2, Workers Compensation and Employers Liability Insurance Information Page, and the underlying Policy, PDF Page 14/14, Part 6(C), Transfer of Your Rights and Duties. Rockwood's evaluation includes standard underwriting for any potential buyer with a review of its financials. Davidson reply dec. at ¶5.

4.	A buyer who assumes the policy will have to cure the payment defaults and assume the liabilities. JRL owes $1,541,372 on pre-petition payment defaults, and it will owe $2,022,614 on post-petition payment defaults, for a total of $4,563,986, by the projected closing date of April 17, 2025.[3] Of those, $3,225,509 are unpaid amounts owed to the Loss Fund under the 2024-25 insurance agreement. If Rockwood is contemplating an assumption of the policy, it will initially determine the outstanding balances that are unpaid by JRL, then role those amounts into in the buyer's financial obligations over time. Davidson reply dec. at ¶6.

5.	A buyer who assumes the policy also will assume the liabilities, including future claims such as disease claims, that JRL is liable for under the six years of its policies with Rockwood. The amounts JRL <u>paid</u> in claims reimbursements to Rockwood are generally accurate

---

[3] The post-petition cure may be marginally less with decreased payroll and premium. Rockwood used a placeholder of monthly premium of $93,591 based on JRL's last reported payroll for January 2025 and premium calculation due and payable February 15, 2025. (Docket 229, Mtn. for Admin Expense at 4, ¶11 & Ex. 1, Davidson decl. at 3, ¶11).

Even discounting the premium by 80 percent for February, March and April based on debtor's representations of declining payroll, that only reduces the post-petition obligation by $224,618. The post-petition balance still would be $1,797,996—only a 11.1-percent overall reduction. (To be sure, JRL defaulted on its obligation to report the February 2025 payroll and pay the resulting premium by March 15, 2025. Rockwood otherwise would have used those numbers.)

4907-1950-7494                                                                    2

(Docket 248, Opp. at 3, ¶5)—but they in no way represent the ongoing liability for current and future claims. *See infra*, ¶12.

6. Taking all those points that must be resolved for Rockwood to even consider a transfer of JRL's policy, Rockwood believes is between "highly, highly unlikely" and "highly, highly, highly unlikely" that a buyer will seek to assume JRL's policy rather than start fresh with a new policy. Davidson reply dec. at ¶8.

**There is no realistic chance that Rockwood may owe**

**funds to the Bankruptcy Estate**

7. Rockwood disagrees that its administrative expense is unsettled because, as JRL puts it, "Rockwood [may] owe funds back to the Bankruptcy Estate." (Docket 248 at 2, ¶3). This misconstrued the insurance agreement and its operation.

8. Over the long term, Rockwood does annual calculations of the amounts it needs to hold in the Loss Fund for future claims. (Docket 229, Mtn. for Admin Expense, Ex. 2, 2019-20 Ins. Agreement at 5, Sec. VI(2), RW5, & Ex. A, Large Deductible Collateral Run-Off Calculation, RW8, as amended by 2021-22 Ins. Agreement, Ex. A, RW11-13). The calculation is done per policy year, such that there is a declining factor applied to the older policy years, as shown in the insurance agreement. *Id.* To the extent there are excess amounts in the Loss Fund in future calculations, the insured has a contingent claim to recover those funds. *Id.* at 4, Section V(6), RW4. But as of now, under the terms of its annual insurance agreements, debtor does not have a right to a refund payment. This is the same process applied to insureds who are not in bankruptcy. Rockwood has not altered the process because of JRL's bankruptcy. Davidson reply decl. at ¶10.

9. None of those provisions will be triggered in this case. There is no chance that there will be excess funds available to pay a contingent claim because it is liquidating its assets.

Davidson reply dec. at ¶11. The insurance agreement has provisions that in the case of a non-operating insured, as JRL will become, Rockwood has the option not to make any refund payments based on the annual calculations. (Docket 229, Mtn. for Admin Expense, Ex. 2, Ins. Agreement at 4, Sec. IV(1)-(2), RW4-5 & Ex. A, Run-Off Calculation, 2nd hanging paragraph, RW8, as amended, RW13.) Instead Rockwood may maintain the funds until it has determined that there are no further expenses and fees to paid—and only then would JRL's contingent claim become payable. *Id.*

       10.    Rockwood also conducts an annual audit of an insured's monthly self-reported payroll used to determine its monthly premium. *Id.* at 2, Sec. III(2), RW2 (self-reported payroll and premium); Reply Ex. 2, Policy at PDF 6/14, Part 5(G) (Audit). The audit may reveal that the insured underreported its payroll, such that it owes additional premium, or overreported its payroll, such that the excess payment may be refunded. However, under the insurance agreement, any excess will be applied to arrears owed by the insured as a matter of recoupment.[4] (Docket 229, Mtn. for Admin Expense, Ex. 2, Ins. Agreement at 2, Section III(3), RW2 (permitting recoupment); *id.* at 4, Section VI(1), RW4 (same).)

---

[4] The Insurance Agreement is governed by Pennsylvania law. (Docket 229, Mtn. for Admin Expense, Ex. 2, Ins. Agreement at 5, Section VIII(2), RW5.) Recoupment, a state law defense available under the governing Pennsylvania law, allows one party to abate the claim of another, by applying mutual claims against each other arising from the same transaction. *Kronz v. Cech*, 175 B.R. 585, 595 (Bankr. W.D. Pa. 1994); *Second Pa. Real Estate Corp. v. Papercraft Corp. (In re Papercraft Corp.)*, 127 B.R. 346, *amending* 126 B.R. 926 (Bankr. W.D. Pa. 1991). This application is permissible as 11 U.S.C. § 558 incorporates state court defenses including recoupment, and the application does not violate the automatic stay under 11 U.S.C. § 362. *In re Patriot Solar Group, LLC*, 569 B.R. 451, 462 (Bankr. W.D. Mich. 2017), *citing In re Delicruz*, 300 B.R. 669, 679 (Bankr. E.D. Mich. 2003); *see* David G. Epstein & Jonathan A. Nockels, *Recoupment: Apples, Oranges and Fruit Basket Turnover*, 58 SMU L. Rev. 51 (2005).

**The expenses of Rockwood's insurance are actual and necessary**

**to preserve JRL's estate as a going concern**

11. The cost and expense of Rockwood's insurance are actual and necessary to preserve the estate, contrary to JRL's conjecture in opposition. (Docket 248 at 2-3, ¶4-5). This point is well briefed in the motion, and nothing in the opposition changes that conclusion.

12. The necessity is illustrated by Rockwood's Loss Analysis as of December 20, 2024, attached as Exhibit 3. Rockwood determined that $3,894,336 is needed in collateral as of that date, based on existing claims and projections of additional expenses on those claims; there was $1,736,442 in collateral; and there was a shortfall of $2,157,894 in collateral. *Id.*, respectively at Collateral Required column with yellow highlight; Collateral Analysis/Reconciliation at 7. Net Collateral; and Collateral Analysis/Reconciliation at Surplus/[Deficit] as 12/20/24, with yellow highlight.

13. By the time JRL filed for bankruptcy, its current allowed claims were from contemporaneous workplace injuries and retirees. The shortfall in Loss Funds for just those funds is nearly $2.2 million, roughly the same as JRL's unpaid defaulted post-petition obligations through the proposed sale closing. None of this covers any claims since the bankruptcy or future claims for diseases. Debtor's insistence that Rockwood is oversecured, and the Loss Fund payments are not necessary, is plainly wrong based on the claims development leading up to the bankruptcy petition.

///

///

///

Dated:  <u>March 19, 2025</u>                                         Respectfully submitted,

| | |
|---|---|
| <u>*/s/Louis M. Bubala III*</u> | |
| Louis M. Bubala III (Nev. Bar No. 8974) | Mary Elisabeth Naumann (KY Bar # 88328) |
| *Admitted Pro Hac Vice* | Chacey R. Malhouitre (KY Bar # 91019) |
| 50 W. Liberty Street, Suite 1100 | JACKSON KELLY PLLC |
| Reno, Nevada 89501 | 100 W. Main Street, Ste. 700 |
| Telephone: (775) 852-3900 | Lexington, KY 40507 |
| Facsimile: (775) 327-2011 | Telephone: (859) 255-9500 |
| E-Mail: lbubala@kcnvlaw.com | Facsimile: (859) 252-0688 |
| | E-mail:  mnaumann@jacksonkelly.com |
| *Counsel for Rockwood Casualty Insurance Company* | chacey.malhouitre@jacksonkelly.com |

## **CERTIFICATE OF SERVICE**

  I certify that March 19, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will serve notice on all parties registered to receive notice in this case.

              */s/Louis M. Bubala III*
              Louis M. Bubala III