IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| JRL Energy, Inc., et al.[1] | ) Case No. 24-61173-grs |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) |

**LIMITED OPPOSITION OF ROCKWOOD CASUALTY INSURANCE COMPANY TO DEBTORS' MOTION TO SCHEDULE AN AUCTION AND SALE HEARING**

Rockwood Casualty Insurance Company ("Rockwood") provides workers' compensation insurance, including federal coverage under the Black Lung Benefits Act, to the Debtors. Rockwood makes two limited objections to the proposed sale of Debtors' assets to Straight Creek Acquisitions, LLC (Motion, Docket 173; Order Modifying Bidding Procedures, Docket 271; Designation Notice Regarding Bidding & Auction, Docket 273; and Debtor's Final Report of Auction, Docket 305).

1. **First**, Rockwood cannot evaluate the proposed sale because the parties have not provided the Transfer Services Agreement ("TSA") identified in but omitted from the Asset Purchase Agreement (Docket 273, Designation Notice at § 2.07(c) 7 & Ex. B).[2] Rockwood must be able to review and analyze the TSA to determine if the APA affects its insurance coverage. Rockwood's concern is that (a) the buyer does not have its own insurance,[3] which it must have to

---

[1] The Debtors in these chapter 11 cases are JRL Energy, Inc, and its subsidiaries JRL Coal, Inc.; JRL Underground, Inc.; and JRL Acquisition, LLC.

[2] The APA placeholder page states that the TSA is "subject to continued negotiation, to be completed prior to entry of the Sale Order." When Rockwood asked for a copy of the agreement from the buyer at the end of the day, April 1, 2025, the buyer's counsel said he will provide the TSA "once finalized." As of the time of this filing (which is required by Noon per the Debtors' Amended Bidding Procedures Order, Docket 271), Rockwood has not received a copy of a proposed TSA.

[3] Rockwood has raised this question with Debtors about buyer's insurance through the sales hearing. Debtors' counsel has not provided any information but stated she has spoken to buyer about the necessity for insurance.

operate the mine,[4] and (b) the TSA is an attempt of the buyer to piggyback on Debtors' coverage from Rockwood. This circumstance is objectionable because Debtors owe more than $1,000,000 for post-petition insurance coverage.[5] However, Rockwood simply does not know whether this is an issue because the parties have not provided the TSA and therefore Rockwood must raise this objection.

2. Thus, the Court should not approve the sale until the parties file the TSA for review by the Court, Rockwood, and all other interested parties. Rockwood also requests sufficient time to evaluate the document and inquire with Debtors and buyer about the terms and then to file any supplemental opposition before the Court determines whether to approve the sale.

3. **Second**, Rockwood also objects to a distribution of any funds until the priority of Rockwood's payment for services is determined under 11 U.S.C. § 506(c), administrative priority, or some other basis. It is undisputed that without postpetition maintenance of the insurance provided by Rockwood, the mines would have shut down.[6]

4. Rockwood moved for allowance and payment of its obligations as an actual, necessary expense pursuant to Sections 503(a) and (b) (Docket 229). The Court denied a request for a hearing on shorted notice but permitted Rockwood to renotice the motion for an evidentiary hearing (Docket 268).

5. In addition, Rockwood reserves the right to seek payment of its postpetition debts pursuant to Section 506(c) as reasonable, necessary amounts for preserving debtor's property pledged to a secured creditor, to the extent of any benefit provided to the secured creditor. 11

---

[4] Federal and state law prohibit a Kentucky mine from operating without third-party workers compensation and Black Lung coverage. 30 U.S.C. § 932(b). Although the federal statute states an operator may be self-insured for black lung coverage, self-insurance is not permissible under the relevant state law for workers' compensation in Kentucky. KRS 304.49-020(1)(f) ("No captive insurer that is issued an initial certificate of authority on or after July 1, 2006, shall directly provide workers' compensation insurance . . . ."). *See generally Lovilia Coal Co. v. Williams*, 143 F.3d 317, 322 (7th Cir. 1998).

[5] *See, e.g.,* Docket 307, Mtn. for Stay Relief, Ex. 2, Ron Davidson declaration at ¶¶ 11-12.

[6] *See supra* note 4.

U.S.C. § 506(c). For example, the value of the collateral pledged for the primary secured lender (Greater Nevada Credit Union and now its successor) would have declined without Rockwood's insurance coverage because the mine would have closed. Debtors also have told this Court that without the sale of the Debtors' assets as a going concern (which will be the case if the mines close for lack of insurance), the estate's value will be diminished: "The DIP Facility provides the funding necessary for the Debtors to reorganize or sell substantially all of their assets as a going concern. Without the DIP Facility, Debtors run substantial risk of moving into administrative insolvency and destroying the going concern value of the Debtors' estates." (Docket 138, Expedited & Supp. Mot. for Postpetition Financing & Use of Cash Collateral, at ¶ 16 (emphasis added).) If Rockwood's claim is entitled to payment under Section 506(c), its claim may be paid ahead of secured creditors.

6. Therefore, Rockwood's continued coverage postpetition is a necessary cost to maximize the value of the estate. If the proceeds of the sale are distributed at the close of escrow or otherwise before a determination of the treatment of Rockwood's claim, it will be virtually impossible for Rockwood to receive payment it may be entitled to under Section 506(c) or otherwise.

7. Finally, in support of this Limited Opposition, Rockwood requests the Court take judicial notice of the prior papers filed in this case, including Debtors' financial records and disclosures; Rockwood's motion for administrative expenses and its reply; Rockwood's response to the second motion for approval of the sale of accounts receivable; Rockwood's motion for relief from the automatic stay; and all supporting papers, including the declarations from Ron Davidson and John Miller. Fed. R. Evid. 201; *see, e.g.*, *In re Thomas*, Case No. 16-27850-DSK, 2019 Bankr. LEXIS 804, *16 (Bankr. W.D. Tenn. March 8, 2019) (court may take judicial notice of the record in its case).

| | |
|---|---|
| Dated: <u>April 2, 2025</u> | Respectfully submitted, |

Louis M. Bubala III (Nev. Bar No. 8974)  
*Admitted Pro Hac Vice*  
50 W. Liberty Street, Suite 1100  
Reno, Nevada 89501  
Telephone: (775) 852-3900  
E-Mail: lbubala@kcnvlaw.com

*/s/Mary Elisabeth Naumann*_____  
Mary Elisabeth Naumann (KY Bar # 88328)  
Chacey R. Malhouitre (KY Bar # 91019)  
JACKSON KELLY PLLC  
100 W. Main Street, Ste. 700  
Lexington, KY 40507  
Telephone: (859) 255-9500  
E-mail:  mnaumann@jacksonkelly.com  
chacey.malhouitre@jacksonkelly.com  

*Counsel for Rockwood Casualty Insurance Company*

## CERTIFICATE OF SERVICE

I certify that April 2, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will serve notice on all parties registered to receive notice in this case, including the Debtors' counsel and the US Trustee.

*/s/Mary Elisabeth Naumann*  
Mary Elisabeth Naumann (KY Bar # 88327)  
*Counsel for Rockwood Casualty Insurance Company*